Good morning, Your Honors. May it please the Court, Myra Mossman for Appellate Spencer Dang. This is a bank fraud case. However, the two issues before the Court has to do with restitution. The first is the challenge to the quality of the government's evidence, therefore, the amount of restitution. And the second is regarding post-judgment interest that was awarded to my client to pay. I'm asking the Court, did you get the second 28J letter that was filed on this? Basically, that sort of codifies or solidifies what I have to say regarding the first issue. Unless you have any questions, I just want to point out that we feel that Gilchrist is holding here, although it was, you know, decided after this case was the sentencing proceeding, but we still feel that this is holding where in a check-hiding case to prove restitution, the best quality of evidence is the check number, the count number, and the bait number, and we don't have that to the tune of $4,000, $40,933. I'm looking, Ms. Mossman, at the objections to the PSR that your predecessor counsel filed on behalf of Mr. Dang, and it says here, Spencer Dang's criminal conduct is not insignificant. He participated in a bank fraud scheme that caused over $795,255 in loss. That's coming from your side, and that's the amount of the restitution that was ordered. Right, but there was restitution hearings after, and we challenged that amount. Well, you may have challenged it later, but it looks like you've admitted it here. In the pre-sentence report? Yeah, and this is a document called Objections to PSR, filed by somebody named Craig Wilkie. Do you know who that is? Yes, that was the prior trial attorney. Yeah. He admitted, but then that was challenged because the court ---- I mean, he says it was loss of over $795,000. I mean, I don't know if he retracted it or said, you know, mother, may I, or what do you know. At the second hearing, the counsel specifically challenged those amounts and specifically asked the court to look at these individual count numbers that were specified in the appellate's opening brief. If I recall correctly from the record, counsel, I think your predecessor counsel attempted to argue for apportionment. We concede, essentially he concedes that the scheme resulted in a total loss of $795,000 plus, but was requesting of the district court to only limit restitution for the amount that he directly received. And when the court rejected that argument for apportionment, that's when the defense raised this argument challenging the sufficiency of the documents used for restitution. Was that what happened? Correct, because the plea agreement had just acknowledged the counts that he actually received. And so the restitution, they wanted to hold him for the actual loss. And so that's why the hearings were held, to determine what that was after the pre-sentence report was filed, because the court was asked for the 90-day extension to make that determination. And so that's when he challenged those, only the counts that were basically submitted as withdrawals. And we feel that Gilchrist is precedent here. Also, Poliak, the case that the government relies on, each check. This would reduce the amount by $40,000, is that it? Yes. It's relevant also because it factors into the second issue, which is the post-judgment interest. My client, Mr. Dang, was the only one out of the 33, the 32 other co-schemers that were awarded post-judgment interest. Now, we feel that's prejudicial under Carter, because it seems retaliatory. I just want to bring up the ---- It's plain error review at this stage now because it wasn't raised below? Yes, that's true. Correct, Your Honor. And are you relying primarily on the fact that now it results in a disparity of sentencing between the co-schemers and your client? Yes, Your Honor, because these were three different indictments of the principal players that were recognized by the court, Maggie Tran and Daniel Nagai. These were three different, two other different, two other indictments. So we feel that the unwarranted sentencing disparity can cross over. And it's prejudicial to my client because the way the apportionment scheme was laid out by the court, once each of those co-schemers meets their restitution, they fall out. And so if no one ---- Mr. Dang is unduly burdened as the only one being ---- He would be left holding the rest of the bag. Exactly. And it's excessive. And so it's almost Sisyphean, because he'll never get out from underneath this, because the court recognized that he has no ability to pay. He has no ability to pay, even if you don't have the interest or the $40,000. He's indigent, and he's never going to get to that anyway. Correct. So that the only practical effect of this is that we get to have an argument. We get to have an argument, but he gets the burden of almost, like I said, Sisyphus. It's a boulder that he can never get out from under, and he's just going to be rolling it up the hill. Suppose he hits the lottery. Suppose he gets the lottery. That's a lucky suppose. But suppose the other ones do, and they fall out, and he's left holding the I'd just like to point out in Romillo, Justice Reinhart, you were on that panel. It says that you cannot unduly burden a defendant who has no hope of fulfilling or complying. But you agree we can charge him the $755,000. Yes. And that's not unduly burdening somebody who's indigent? That is unduly burdening. I wish I had more evidence in the record to contest that amount. But I was just left with a But it's hard to make an argument that it's unduly burdening him to make him pay $795,000, although he's going to have to pay $755,000. Is there much of a difference? There is when you factor in this also the interest that's going to accrue over time. And basically, my client said in the agreement, he agreed to pay no more than $795,000. And $225,000, he agreed to pay no more. With the accrued interest, he's going to pay more. Do you want to save your time for rebuttal? Yes. I just want to mention the Third Circuit case slight. In my brief, I just want to bring that up. Where that defendant could pay restitution, was capable of paying restitution, and that's why post-judgment interest was afforded in that case. And, Your Honors, I'd like to reserve the remainder of my time. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the United States. I don't have much to add beyond what's in our briefing. I will note one thing that I noticed in preparing for argument over the weekend, which is that even of the $45,000 that the defendant is now contesting, $9,434 of that was actually deposits made by co-defendant Fong Nguyen for which there apparently were not checks. But obviously the restitution amount is based not on deposits but on withdrawals. And if you look at page 9 of the appellant's opening brief, that's where it identifies the checks from Fong Nguyen as being deposits. I don't think that particularly matters, Your Honors, because here the question is whether it was clear error for the Court to think that more probably than not the bank records would be accurate. And under that standard, I think there's the records themselves satisfy the minimum and dish of reliability that would be imposed for calculating restitution. And without a doubt, when they're buttressed by defendant's own admissions, which are not merely, Judge Silverman, in the objection to the PSR, even in the opening brief, defendant writes, it was determined that Mr. Dang owed $795,225, which reflected the amount of actual loss. That's at AOB 4. The plea agreement states that the total loss was approximately $795,225. During one of the restitution hearings, defense counsel argues my client's gain was approximately 25%. He received $200,000 total. Obviously, 25% of $795,000 is about $200,000. So there's this course of admissions throughout until the argument that he intends to primarily rely on, as you know, Judge Nguyen, is this apportionment argument. When the district court rejects apportionment, he actually then shifts to a second argument, which is to contend that the bank records aren't reflecting checks paid, but also include fees and other amounts. After the defense counsel has a chance to review those bank records, he withdraws that argument and finally makes this argument that in a case involving fraudulent checks, the only way to prove loss is the checks themselves. Can you give us a better picture of what exactly defense counsel reviewed and what the district court saw? Because the bank records themselves are not in the record. The scheme involved five different institutions, but of the $40,000-plus challenge by the defense in this case, did it relate to all five banks involved in the scheme, or was it directed primarily towards one or two financial institutions? I'm embarrassed to say I cannot answer that question, Judge Nguyen. If I could look at, see what I can find in the additional record materials I have with me, I will say that the bank, I wasn't the prosecutor who handled this in the district court. You're correct that the bank records themselves were not introduced as exhibits. They were provided in discovery, and the district court refers to the backup documentation and asks defense counsel whether he had had a chance to review the backup documentation for the summary chart the government provided. The summary chart is part of the record but was not included in the excerpts of record, nor is it available on PACER because it was placed under seal in the district court. What that chart shows is the account numbers for each of the defendants and which accounts they're making withdrawals and deposits to and from, but I don't believe that that chart indicates the financial institutions defendant by defendant. I'm sure with minimal effort, either speaking to the trial at USA or doing my own research, I could tie those accounts to particular institutions. But again, defense counsel never made an argument that, you know, these accounts were prepared by Arthur Anderson, we can't trust them. It was a general, and I think continues to be a general proposition, that you just can't trust bank records at all. Only the photocopies of the checks themselves will suffice. And there's just nothing in the case law to support that. The general invoice cases are dealing with quite a different issue, which is where all of them, I think, involve basically meth labs that have caused damage to someone else's property. And then the proprietor attempts to recover in restitution the cleanup costs and does so by just submitting invoices that show how much they nominally spent. But there's no way to say for certain whether the new couch they bought had anything to do with the meth lab. And so where you can't show causation just from the general invoices, then those are insufficient. Here there's no such causation issue. I didn't want to step on your line there. Are you done with that? Yes. Do I understand correctly there were two other co-defendants? I think there were more than two other co-defendants, Your Honor. There were two other principal co-defendants, and I think there were several additional. Is this the only guy who was required to pay interest on the restitution? Yes, Your Honor. How do we explain that disparity? He was the ringleader, Your Honor. And the district court, in fact, says that not with respect to the interest issue, but with respect to the apportionment issue, says that he thinks that this defendant is situated differently, that he had been profited more, that he had, as the ringleader, was a more central figure. So while there's nothing explicitly on why interest would be imposed here, I think that context provides a distinction between them. And I think where there's no objection interposed in the district court to expect there to be an explanation may be too much to ask the district court. Do we know whether the other defendants asked to have the interest waived? Or do we know? I don't know. Because this defendant did not ask to have the interest waived. He did not ask to have the interest waived. It may be a consequence of the fact that the other defendants weren't contesting the amount of restitution, and as a consequence, it may have just been that the, you know, they prepared some submission to the court that was accepted, whereas in this case it was the government that ultimately prepared the submission. The chart of who was to be paid. But, again, I think that if it were the case that the default rule was that interest would be waived and the exception was that interest would be imposed, then I think there would be a problem with a failure of explanation. But where the statutory scheme is that the default is for interest to be imposed, I think that the lack of an explanation where there's no objection isn't particularly problematic. It just means that if the judge is going to follow the ordinary course dictated by the MVRA, he's going to do that unless someone steps up and says, no, your Honor, could you please waive interest on my client? Now, whether the district court would have been willing to do that, given this defendant's greater culpability, I'm not sure. In any event, even if there were error and even if it were obvious, which, you know, the defendant has pointed no case law that would establish obvious error. For the reasons Judge Reinhart noted, I don't think he can satisfy the third or fourth prongs of plain error review. He's never going to pay, by his own argument, the principal. So the amount of interest is not going to have any practical effect. I understand that. Kennedy. And is there really any reason to fight about this on appeal? Don't you think it could have been resolved and settled? And is it in the interest of the government or the defendant to go through an appeal on this case rather than, if you say you're never going to get the money anyway, what do you care? Well, first of all, Your Honor, it's not the government's money. It's the victim's money. And so — Well, whoever it is, if you say that, you're never going to collect it. Well, we may. The defendant may — I didn't make that up. I thought I just heard you say — No. The defendant's argument is that he's never going to be able to pay it. I think probably in the ordinary course that's correct. Although he could come into an inheritance. He could — Does he have rich parents? My sense is that he has — he comes from a relatively well-to-do background. I don't think he was homeless when this scheme was launched. It's fairly complicated. You know, I just saw something in Arizona that the chances of winning the Arizona lottery are 1 in 30 million. But the chances that the winner is delinquent in child support is 1 in 5. More generally, though, Your Honor, the government, of course, did not want an appeal here. We negotiated for an appeal waiver. There was then a Buchanan error in the district court where the district court erroneously told defendant that because he had contested restitution — No, I know the government doesn't want appeals in any case. Well, that's not, I think, true, Your Honor. I think that — That's why you negotiate for appeal waivers when you can. Yes. Why — in terms of settling, I'm — do not think that in the ordinary course it would be appropriate for the government to settle where there's a statute requiring us to attempt to collect restitution for the victims of the scheme. And so even if — nor am I sure what exactly the government would do. We would not confess error and ask for remand where the district court committed no error. I think we have an obligation to the district court where it's committed no error to defend the judgment. Other than a confession of error, I'm not sure how this case would have gotten back to the district court. Well, I can tell you how you get back to a district court when you can. We have a mediation program, and a lot of cases get settled. You don't have to confess error or say the district judge made terrible mistakes. It's all right. There was just curiosity about why we are spending our time on something that I thought you said there was no chance of collecting. I think it's unlikely that we'll collect. My point is that where a defendant argues that there is no possibility of him paying the principal, he cannot simultaneously argue that he's prejudiced by having interest imposed.  Thank you. Thank you, Your Honor. How's it, Sisyphean? Whatever it is. Rolling the rock. The myth of Sisyphus. Yes. It's a verb. No, no. I was just trying to pronounce the Sisyphean era, how it was doing. Sisyphean. Sisyphean, yes. Your Honor, I got the rock right. You got the rock right, the boulder. Okay. Mr. Dang is exceedingly poor. His family is exceedingly poor. His mother committed suicide when he was like 15. Well, I'm not going to collect from her then. I'm just saying they don't have a rich family. I'm not sure what counsel was talking about. Although the government would like to characterize Mr. Dang as the ringleader, the court itself at the restitution hearing held on the 29th of February recognized the principal players in the scheme were the similar, Maggie Tran and Daniel Nye. That's why they're asking for this disparity argument. And we feel under Romillo, a defendant has to have hope of paying restitution, as in slight he was capable of doing this. And the third argument I'd like to address is the bank records. I don't believe there was no affidavit to support these summary charts. There was no testimony, as in Brock Davis. The case that the government just submitted on Friday, these were supported records. And we don't have that here. And if you look at the first superseding indictment, you might get an idea of what that chart looked like. So if there's any other questions, that's all I have to say. Thank you very much. Thank you, Your Honors. The case just argued and submitted.
judges: Reinhardt, Silverman, Nguyen